[Cite as *In re S.W.*, 2023-Ohio-793.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

IN THE MATTER OF: S.W. & K.W. :
                                   :

                                   :      Case Nos. 22CA9
                                   :                  22CA10

Adjudicated Dependent Children.    :

                                   :

                                   :      <u>DECISION AND JUDGMENT</u>
                                   :      <u>ENTRY</u>

                                   :

                                   :

---

**APPEARANCES**:

Robert W. Bright, Middleport, Ohio, for Appellant.

James Holdren, Gallia County Prosecuting Attorney, Emily VanSickle, Assistant Prosecuting Attorney, and Randy Dupree, Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

---

Smith, P.J.

{¶1} Appellant, S.F., appeals the trial court's decision that granted permanent custody of his two children, S.W. and K.W., to Gallia County Job and Family Services ("the agency"). Appellant raises two assignments of error and argues that (1) the trial court's finding that the children cannot be placed with him or should not be placed with him is against the manifest weight of the evidence and (2) the trial court should not have credited the guardian ad litem's (GAL) report due to purported inadequacies. For the

reasons that follow we do not find any merit to Appellant's assignments of error. Therefore, we overrule his assignments of error and affirm the trial court's judgment.

## FACTS

{¶2} On January 8, 2020, the agency filed a complaint that alleged seven-month-old S.W was a dependent child. On February 20, 2020, the court adjudicated the child a dependent child. The trial court later placed the child in the agency's temporary custody.

{¶3} On December 16, 2020, the agency filed a complaint that alleged S.W.'s newborn sibling, K.W., is a dependent child. The agency alleged that the child is dependent based upon S.W. being in the agency's temporary custody. The agency initially sought and was granted a protective supervision order but later requested temporary custody of the child. The parties subsequently agreed to place the child in the agency's temporary custody. Thus, on January 5, 2021, the court placed the child in the agency's temporary custody. On January 26, 2021, the trial court adjudicated the child dependent and continued the child in the agency's temporary custody. On March 18, 2021, the court entered a dispositional order that placed the child in the agency's temporary custody.

{¶4} On November 18, 2021, the agency filed motions that asked the court to place the children in its permanent custody. The agency alleged that S.W. has been in its temporary custody for 12 or more months of a consecutive 22-month period and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. With respect to K.W., the agency alleged that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.

{¶5} On June 14 and 15, 2022, the court held a permanent custody hearing. Caseworker Jessica McCoy testified that the agency's initial concerns about the parents included the mother's drug use, a lack of proper parenting, and domestic violence between the parents. The agency developed a case plan that required the mother to complete parenting classes, a mental health evaluation, alcohol and drug treatment, and any recommended counseling. The case plan also required the mother to consistently visit the children. The case plan required Appellant to complete parenting classes and a mental health evaluation. It also required Appellant to maintain appropriate housing and consistently visit the children.

{¶6} McCoy stated that Appellant completed parenting classes, but she is uncertain whether Appellant completed a mental health evaluation.

She explained that the agency did not have a signed release so the agency was unable to obtain documentation.  McCoy does not know whether Appellant currently is employed but he was not regularly employed throughout the pendency of the case.

{¶7} McCoy indicated that Appellant has lived in the same residence since S.W.'s removal.  However, she stated that she was unable to regularly enter the residence to determine whether it was suitable for the children. McCoy explained that agency caseworkers made three attempts each month to visit Appellant's residence.

{¶8} McCoy stated that when she was able to enter Appellant's home, it was not appropriate.  McCoy reported that the bathroom floor was caving in, the door had cracks that allowed bugs inside, and one of the windows was broken.  She also found roaches.  McCoy explained that the agency provided ways that Appellant could obtain assistance to make the repairs and that each month when the agency caseworkers visited Appellant's home they would tell Appellant what he needed to fix in order to make the residence appropriate for the children.  Appellant usually stated that his landlord would make the repairs.

{¶9} McCoy indicated that she last was in Appellant's residence in the latter part of 2021 and that the repairs had not been made.  In January

and February 2022, she tried to evaluate the residence but Appellant "denied access into the home." McCoy reminded Appellant that part of the case plan required him to maintain appropriate housing and that she was unable to determine the appropriateness of Appellant's residence without being permitted inside.

{¶10} McCoy further testified that Appellant did not regularly visit the children. The agency offered Appellant two visits each week but Appellant never attended two visits within one week. She stated that Appellant attended 12 visits and missed 58 available visits.

{¶11} One of the children's foster parents testified that S.W. has lived in the foster home since January 2020, and that K.W has lived in the home since January 2021. He explained that he and his wife have bonded with the children and that they are interested in adopting the children.

{¶12} Appellant testified that he has completed two mental health evaluations: one at Hopewell and one at Integrated Services. He also stated that he remained employed at various times during the pendency of the case. He worked at Speedway for a little more than one year, Electrocraft for about two or three months, and Taco Bell for about two months.

{¶13} Appellant explained that he currently receives income from (1) a business that he operates with his younger brother, (2) Integrated Services,

and (3) Patreon ("a site for content creators to get money from the people that um, use their content"). Appellant stated that he operates "a ministry through Twitter, Facebook, and YouTube." He claimed that he has enough money to pay his bills, purchase food to eat, and provide for the children's needs.

{¶14} Appellant indicated that he had "two major issues" with visitation. He explained that when he worked at Speedway his visits were scheduled early in the day and the agency would not schedule them for a later time in the day. Appellant stated that he worked the nightshift unloading trucks and he needed to sleep at the time designated for his visits.

{¶15} Appellant testified that he also had a medical condition that left him unable to comply with the visitation center's mask requirement. He stated that he gave medical documentation to the agency and to the visitation center to establish his inability to wear a mask. He claimed that at first he was allowed to visit without wearing a mask. The policy later changed and he was required to wear a mask. Appellant stated that he missed around 75% of the visits due to the mask requirement. Appellant explained that he tried to wear a mask a few times but he "could only make it about 10 minutes" before he became "so lightheaded" that he thought that he "was about ready to pass out."

{¶16} Appellant agreed that the visitation center permitted some outdoor visits. He stated that some visits were canceled due to weather and explained that he canceled outdoor visits if the weather report showed "a high chance of rain." Appellant stated that he also participated in a few virtual visits but he had some internet connectivity issues. Appellant testified that the visitation center later stopped doing virtual visits and told Appellant that he "either had to suck it up and wear the mask or [he] had to get weekly or bi-weekly tests for Covid, which sometimes takes two or three hours just sitting and waiting." He also stated that taking Covid tests gave him migraines that lasted "two to three days afterwards." He thinks "that the pandemic is the number one reason that [he] wasn't able to participate in visits" and that he would have attended "over 90% of the visits if the pandemic was not an issue." After the visitation center ended the mask requirement, however, Appellant agreed that he did not attend over 90% of the visitations.

{¶17} Appellant further testified that his residence is appropriate for the children. He has one bedroom that he uses as his own and the children's beds are in the living room. Appellant claimed that he has fixed the bathroom floor and that the "broken window" is nothing more than a crack on the outside portion of a double-paned window. Appellant also denied

that bugs enter the residence through a hole in the door and stated he occasionally sees a roach. Appellant does not believe that his residence has any "major issues."

{¶18} On cross-examination Appellant stated that he was not aware that the agency caseworkers had been at his residence: "They have not uh, contacted me besides knocking." Appellant indicated that he was aware that the caseworker needed to see his home in order to determine its appropriateness and stated that he has "not stopped it." He stated that one time he was sick and "not in any condition to let anyone in [his] home."

{¶19} On June 30, 2022, the trial court granted the agency permanent custody of the children. The trial court noted that Appellant has lived in the same one-bedroom apartment since the beginning of the case and that the home study identified two primary concerns: (1) the cleanliness of the home and (2) the condition of the bathroom floor. The bathroom floor "was noticeably weak and needed to be replaced and/or reinforced," and roaches and mice were found in the home. The court recognized Appellant's assertion at the permanent custody hearing that he has remedied the concerns with his residence but further pointed out that Appellant has not allowed the agency caseworkers into the home to inspect his progress and has refused to communicate with the caseworkers except through his attorney. The court

also observed that Appellant introduced photographs of his residence, but he did not submit photos of the kitchen or the bathroom, which were the primary areas of concern. The court thus found that Appellant's "residence remains unacceptable and unsafe for [the] children."

{¶20} The court additionally determined that Appellant "has a dismal visitation record." The caseworker stated that Appellant has attended a total of 12 in-person and virtual visits over the past two-and-a-half years. Appellant offered many reasons why he could not visit, one of which was that his job interfered. The court thus offered additional visitation times. Appellant then stated that he could not visit due to an inability to comply with the agency's requirement to wear a face covering. Appellant's mental health provider submitted a letter that stated that Appellant could not wear a face covering. The agency thus offered Appellant visits if he tested negative at each visit. Appellant stated that he could not take the tests because they gave him migraine headaches. The agency also allowed Appellant to visit the children outside when the weather permitted and offered virtual visits. Appellant had three virtual visits with the children, but he stated that the internet service was poor and made virtual visits difficult. Appellant thus stopped participating in virtual visits. The court noted, however, that Appellant "successfully use[d] his internet service to post numerous videos

on social media platforms such as Twitter, You Tube [sic], and Facebook, where he claims to have thousands of followers."

{¶21} The court additionally found that Appellant's visitation record remained dismal even after the visitation center no longer required masks. Once masks no longer were required, Appellant still missed over half of his twice-weekly visits, "even though his case manager was willing to provide transportation and he was unemployed."

{¶22} The trial court found it "undisputed that the children have been in" the agency's custody "for more than 12 months in a consecutive twenty-two-month period." The court also found that the parents failed to remedy the conditions that caused the children's removal. The court stated that neither parent satisfactorily completed the case plan requirements. The court further noted that the mother told the caseworker that she would not be attending the permanent custody hearing and that she would like the children to remain with the foster parents.

{¶23} The court next found that placing the children in the agency's permanent custody is in their best interests. The court noted that S.W. has been in foster care for over two-and-a-half years, the children are bonded with the foster parents, the foster parents are eager to adopt the children, and the guardian ad litem recommended that the court grant the agency

permanent custody of the children.  The court thus granted the agency

permanent custody of the two children.  This appeal followed.

ASSIGNMENTS OF ERROR

I.      THE JUVENILE COURT DID NOT FOLLOW AND/OR
        MISAPPLIED THE FACTORS FOUND IN R.C.
        2151.414.

II.     THE REPORT OF THE GUARDAIN AD LITEM DOES
        NOT COMPLY WITH SUPERINTENDENCE RULE
        48.06 AND THE GUARDAIN AD LITEM DID NOT
        TESTIFY.

ANALYSIS

{¶24} In his first assignment of error, Appellant essentially argues

that the trial court's permanent custody decision is against the manifest

weight of the evidence because clear and convincing evidence does not

support the court's finding that the children cannot be placed with him

within a reasonable time or should not be placed with him.  More

particularly, Appellant contends that the trial court incorrectly determined

that he failed to remedy the problems that caused the children's removal

from the home.  Appellant also challenges the court's finding that he

demonstrated a lack of commitment toward the children by failing to

consistently visit them.  He argues that he was not able to regularly visit the

children due to the pandemic and the visitation center's mask mandate.

Appellant contends that his lack of visitation was due to "inability, not unwillingness."

{¶25} The agency asserts that the trial court found that the children had been in its temporary custody for 12 or more months of a consecutive 22-month period and that the court's alternate finding that the children cannot or should not be placed with either parent is superfluous.

STANDARD OF REVIEW

{¶26} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *See In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 53 (4th Dist.). When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶27} In a permanent custody case the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.* at ¶ 55.

{¶28} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 485 N.E.2d 717. A reviewing court should find a trial court's

permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175, 485 N.E.2d 717.

PERMANENT CUSTODY FRAMEWORK

{¶29} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds by clear and convincing evidence that (1) the child's best interest would be served by the award of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive 22-month period, or the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(d)

{¶30} In the case at bar, the trial court found that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent and that the children have been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. On appeal, Appellant has not challenged the court's 12-out-of-22 finding under R.C. 2151.414(B)(1)(d). Instead, Appellant challenges the trial court's alternate R.C. 2151.414(B)(1)(a) finding and its corresponding findings under R.C. 2151.414(E).

{¶31} As we have noted in previous cases, R.C. 2151.414(B)(1)(a), by its terms, is inapplicable when a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period. *In re S.S.*, 4th Dist. Jackson No. 16CA7, ¶ 126, citing *In re Damron*, 10th Dist. Franklin No. 03AP-419, 2003-Ohio-5810, ¶ 9 ("The

plain language of R.C. 2151.414(B)(1)(a) reveals that this subsection is only triggered when none of the remaining * * * subsections are triggered."). Consequently, when a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. *See e.g., In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 21; *In re A.M.1*, 4th Dist. Athens Nos. 10CA21-10CA31, 2010-Ohio-5837, ¶ 31; *In re T.F.*, 4th Dist. Pickaway No. 07CA34, 2008-Ohio-1238, ¶ 23; *In re Williams*, 10th Dist. Franklin No. 02AP-924, 2002-Ohio-7205.

{¶32} R.C. 2151.414(B)(1)(e) specifies that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1)(e). Additionally, when calculating whether a child has been in an agency's temporary custody for 12 or more months, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26. Instead, the child must have been in the agency's temporary custody for 12 or more

months of a consecutive 22-month period at the time that the agency files its permanent custody motion. *Id.*

{¶33} In the case at bar, S.W. was removed from the home in January 2020, and the court adjudicated the child dependent on February 20, 2020. Thus, when the agency filed its November 18, 2021 permanent custody motion, S.W. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. On the other hand, K.W. was removed from the home on January 5, 2021, and the court adjudicated the child dependent on January 26, 2021. Thus, when the agency filed its November 18, 2021 permanent custody motion, K.W. had not yet been in its temporary custody for 12 or more months of a consecutive 22-month period.

{¶34} In previous decisions, we typically have recognized that a trial court's R.C. 2151.414(B)(1)(a) finding is superfluous when the record shows that a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period or when a parent does not dispute that a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period. *See e.g., In re A.P.*, 4th Dist. Gallia No. 21CA14, 2022-Ohio-1577, ¶ 36. In the case before us, however, the record does not establish that K.W. has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. And

although Appellant does not specifically challenge the court's R.C.
2151.414(B)(1)(d) finding, he also does not explicitly agree that K.W. has
been in the agency's temporary custody for 12 or more months of a
consecutive 22-month period.  However, the agency argued in its brief that
the court's alternate finding is superfluous and Appellant did not file a reply
brief that disputed the agency's argument.  Nevertheless, in the interest of
justice and because the agency's permanent custody motion pertaining to
K.W. does not allege that the child had been in its temporary custody for 12
or more months of a consecutive 22-month period, we will consider whether
the court's R.C. 2151.414(B)(1)(a) finding, as it relates to K.W., is against
the manifest weight of the evidence,

{¶35} R.C. 2151.414(E) requires a court that is determining whether a
child cannot be placed with either parent within a reasonable period of time
or should not be placed with the parents to consider all relevant evidence.
The statute further specifies that if one or more of the following conditions
exist "as to each of the child's parents, the court shall enter a finding that the
child cannot be placed with either parent within a reasonable time or should
not be placed with either parent:"

> (1) Following the placement of the child outside the
> child's home and notwithstanding reasonable case
> planning and diligent efforts by the agency to assist the
> parents to remedy the problems that initially caused the

child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * * *

{¶36} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E)(1) factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50; *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996); *e.g., In re L.R.B.*, 2nd Dist. Montgomery No. 28826, 2020-Ohio-6642, ¶ 52; *In re Hurlow*, 4th Dist. Gallia No. 98CA6 (Sept. 21, 1998).

{¶37} Here, the trial court determined that Appellant failed to substantially remedy the conditions that led to K.W.'s removal and that he demonstrated a lack of commitment to K.W. We do not believe that the

court's findings are against the manifest weight of the evidence. The record shows that Appellant's visitation history with the children was dismal. Although Appellant faults the pandemic and the visitation center's mask mandate, the trial court found that the center made efforts to accommodate Appellant's inability to wear a mask by offering outdoor visits. The center also offered virtual visits, which Appellant claimed posed difficulties due to poor internet connection. Furthermore, we observe that the GAL's closing argument indicates that she gave Appellant time to demonstrate that he could remedy some of the more pressing problems (the condition of the home and lack of consistent visitation) before issuing her final recommendation. She explained that even after the visitation center lifted its mask mandate, Appellant still did not consistently visit the children. The GAL expressed concern that Appellant's "lackadaisical" attitude throughout the pendency of the case foretold a future in which the children's well-being would remain at risk. Moreover, Appellant (1) did not allow the agency caseworkers into his home so that they could assess its suitability for the children and (2) did not give the agency satisfactory evidence that he had sufficient income to support the children. The trial court reasonably could have determined that Appellant's lackadaisical attitude and failure to cooperate with the agency demonstrated that he lacked a commitment to the children. Therefore, the

record contains ample clear and convincing evidence to support the court's

finding that K.W. cannot be placed with Appellant within a reasonable time

or should not be placed with Appellant.

## Best Interest

{¶38} Appellant has not argued on appeal that the trial court's best-

interest findings are against the manifest weight of the evidence. Therefore,

we do not address this issue. Instead, we simply note that the record

contains plenty of clear and convincing evidence to support the court's

decision that placing the children in the agency's permanent custody is in

their best interests.

{¶39} Accordingly, based upon the foregoing reasons, we overrule

Appellant's first assignment of error.

## SECOND ASSIGNMENT OF ERROR

{¶40} In his second assignment of error, Appellant asserts that the

guardian ad litem's report does not comply with Sup.R. 48.06.[1] He contends

---

[1] Sup.R. 48.06 contains general guidelines for a guardian ad litem's report and provides as follows:

(A) General Report Requirements.
(1) A guardian ad litem shall prepare a written final report, including recommendations to the court, within the times set forth in this division. The report shall affirmatively state that responsibilities have been met and shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted, and all other relevant information considered by the guardian ad litem in reaching the recommendations and in accomplishing the duties required by statute, by court rule, and in the order of appointment from the court.
(2) All reports shall include the following warning: "The guardian ad litem report shall be provided to the court, unrepresented parties, and legal counsel. Any other disclosure of the report must be approved in advance by the court. Unauthorized disclosure of the report may be subject to court action, including the penalties for contempt, which include fine and/or incarceration."
(3) Oral and written reports shall address relevant issues but shall not be considered determinative.
(4) A guardian ad litem shall be available to testify at any relevant hearing and may orally supplement the report at the conclusion of the hearing.
(5) A guardian ad litem may provide an interim written or oral report at any time.

that the GAL's report does not outline "the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted, and all other relevant information considered by the guardian ad litem," as set forth in Sup.R. 48.06(A)(1).  Appellant alleges that without this information, the trial court lacked a sufficient foundation to rely upon the GAL's report and recommendation.  Appellant additionally summarily argues that trial counsel was ineffective for "failing to more extensively examine the GAL in order to gain more detail about her investigation."

### GAL Report

{¶41} We first observe that Appellant did not object to any purported inadequacies in the GAL's report during the trial court proceedings.  As a general rule, appellate courts " 'will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected.' "  *Cline v. Rogers Farm Ents., LLC*, 2017-Ohio-1379, 87 N.E.3d 637, ¶ 47 (4th Dist.), quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d

---

(B) Guardian Ad Litem Reports in Abuse, Neglect, Dependency, Unruly, and Delinquency Reports.
(1) A guardian ad litem in abuse, neglect, dependency, unruly, and delinquency cases and actions to terminate parental rights shall provide a written report to the court, unrepresented parties, and legal counsel not less than seven days prior to any initial dispositional hearing, permanent custody hearing, and any hearing upon a motion requesting a change in disposition.  The court may alter the seven-day period as may be necessary for the administration of justice.
(2) A court shall review all guardian ad litem reports, written or oral, to ensure that the guardian ad litem has performed those responsibilities required by R.C. 2151.281.
(C) Guardian Ad Litem Reports in Allocation of Parental Rights and Responsibilities Cases.
(1) A guardian ad litem in proceedings involving the allocation of parental rights and responsibilities, custody, and visitation shall provide a report to the court, unrepresented parties, and legal counsel not less than seven days before the final hearing date, unless the due date is modified by the court.
(2) The court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit.

207, 210, 436 N.E.2d 1001 (1982). "Thus, a party forfeits, and may not raise on appeal, any error that arises during trial court proceedings if that party fails to bring the error to the court's attention, by objection or otherwise, at a time when the trial court could avoid or correct the error." *Id.*, citing *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997), and *Stores Realty Co. v. City of Cleveland Bd. of Bldg. Standards and Bldg. Appeals,* 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).

{¶42} Moreover, parties may not raise any new issues or legal theories for the first time on appeal. *Stores Realty*, 41 Ohio St.2d at 43. Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (explaining that defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (concluding that party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd.*

*of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (explaining that an appellant cannot "present * * * new arguments for the first time on appeal"); *accord State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, fn.3 (stating that "[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); *State v. Anderson*, 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, ¶ 24 (explaining that "arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").

{¶43} Appellate courts may, however, consider a forfeited argument using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (stating that reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (stating that "[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[ ] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it"). For the plain error doctrine to apply, the party claiming error must establish (1) that " 'an error, i.e., a

deviation from a legal rule' " occurred, (2) that the error was " 'an "obvious"

defect in the trial proceedings,' " and (3) that this obvious error affected

substantial rights, i.e., the error " 'must have affected the outcome of the

trial.' " *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d

860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240

(2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d

1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although

neither objected to nor affirmatively waived which, if permitted, would have

a material adverse affect [sic] on the character and public confidence in

judicial proceedings.").  For an error to be "plain" or "obvious," the error

must be plain " 'under current law.' " *Johnson v. United States*, 520 U.S.

461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), quoting *United*

*States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508

(1993).  *Accord Barnes, supra*, at 27; *State v. G.C.*, 10th Dist. Franklin No.

15AP-536, 2016-Ohio-717, ¶ 14.  Thus, the error must be plain "at the time

of appellate consideration." *Johnson* at 467.

{¶44} The plain error doctrine is not, however, readily invoked

in civil cases.  Instead, an appellate court "must proceed with the utmost

caution" when applying the plain error doctrine in civil cases.  *Goldfuss v.*

*Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).  The Supreme

Court of Ohio has set a "very high standard" for invoking

the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87

Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply

limited to the extremely rare case involving exceptional circumstances

where error, to which no objection was made at the trial court, seriously

affects the basic fairness, integrity, or public reputation of the judicial

process, thereby challenging the legitimacy of the underlying judicial

process itself." *Goldfuss*, 79 Ohio St.3d at 122, 679 N.E.2d

1099; *accord Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719,

816 N.E.2d 1049, ¶ 43. Moreover, appellate courts " 'should be hesitant to

decide [forfeited errors] for the reason that justice is far better served when it

has the benefit of briefing, arguing, and lower court consideration before

making a final determination.' " *Risner* at ¶ 28, quoting *Sizemore v. Smith*, 6

Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott*

*Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995)

("Litigants must not be permitted to hold their arguments in reserve for

appeal, thus evading the trial court process."). Additionally,

"[t]he plain error doctrine should never be applied to reverse

a civil judgment * * * to allow litigation of issues which could easily have

been raised and determined in the initial trial." *Goldfuss*, 79 Ohio St.3d at

122, 679 N.E.2d 1099.  Furthermore, we "ordinarily will not craft a plain-error argument for an appellant who fails to do so."  *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380, ¶ 24 (4th Dist.); *accord Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, ¶ 34, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan,* 714 F.2d 171, 177 (D.C. Cir. 1983) (stating that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because ' "appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them" ' "); *Coleman v. Coleman,* 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (explaining that reviewing court will not craft plain error argument for an appellant who fails to raise one).

{¶45} In the case before us, Appellant did not argue that the trial court obviously erred by considering the GAL's recommendation due to its alleged inadequacies.  We further point out that this court, along with other Ohio appellate courts, has refused to recognize purported Sup.R. 48.06 violations as reversible error.  *See In re K.L.*, 11th Dist. Portage No. 2021-P-

0022, 2021-Ohio-3080, ¶ 63 ("the failure to comply with the Rules of Superintendence, even if a technical error, is not reversible"); *In re E.W.*, 4th Dist. Washington No. 10CA18, 2011-Ohio-2123, ¶ 12 (superintendence rules are internal housekeeping rules that do not create any substantive rights); *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (superintendence rules are "administrative directives only, and are not intended to function as rules of practice and procedure"); *accord In re R.P.*, 2021-Ohio-4065, 181 N.E.3d 594, ¶ 31 (10th Dist.); *State v. Clark*, 9th Dist. Medina No. 20CA0020-M, 2021-Ohio-3397, ¶ 39; *State v. Klayman*, 4th Dist. Hocking No. 17CA13, 2018-Ohio-3580, ¶ 17; *see State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 41, quoting *Singer*, 50 Ohio St.2d at 110, 362 N.E.2d 1216 (" '[t]he Rules of Superintendence are not designed to alter basic substantive rights' ") (Kennedy, J., concurring in part and dissenting in part).

{¶46} Moreover, Appellant has not shown that the result of the trial court proceedings would have been different if the GAL's report had been more detailed.  Appellant has not argued, for example, that the trial court would have decided not to place the children in the agency's permanent custody if the GAL's report did not suffer from the alleged inadequacies.

{¶47} We also observe that at the end of the permanent custody hearing, the parties and the GAL presented closing arguments. During her closing argument, the GAL recognized the seriousness of the life-altering decision that she had to make and detailed her observations, reasoning process, and ultimate recommendation. The GAL explained that she had some "reservations" about the case and contacted both the court and the attorneys for the parties to explain "why [she] was having * * * problems." She stated that her concerns involved (1) the unsuccessful visitations, (2) the lack of proof that Appellant earned sufficient income to be able to provide for the children, and (3) the agency's inability to inspect Appellant's residence. The GAL indicated that she delayed issuing her final report to give the parties adequate time to resolve those concerns. She stated that if these "easily remedied" concerns were resolved, then she "might make a different suggestion." The GAL related that she gave "the parents the absolute benefit of every doubt that [she] had" to allow them "one last chance to show [her] that they cared enough to get these things done." She stated, however, that as of the date of the permanent custody hearing, Appellant still had not allowed the agency to inspect the home to determine its suitability for the children, had not produced evidence of stable income via paycheck stubs, and had not demonstrated consistent visitation.

{¶48} The GAL noted that she had given Appellant time to demonstrate consistent visitation after the visitation center lifted its mask mandate, yet his visitation record remained dismal. She stated that after the center lifted its mask mandate, "there had been no improvement." The GAL indicated that she had hoped that she would have "seen some effort being made" so that Appellant's visits could be increased and so that he could become more involved in the children's lives.

{¶49} The GAL explained that when reaching her decision to recommend that the court place the children in the agency's permanent custody, she considered all of the foregoing factors, as well as the children's stability with the foster family, the length of time that they had spent in the foster home, and their young age. She related her belief that she has "gone beyond * * * to try to get [the parents] to do some compliance so that [she could] make a different recommendation." The GAL stated that she gave her decision "hours and hours of thought and prayer" and considered "everyone involved." She further recognized, however, that her primary duty was to act in the children's best interests. The GAL concluded that due to the parents' "lackadaisical attitude," she does not believe that either parent has demonstrated that they would provide the children with "a

suitable, stable, [and] healthy environment." She thus recommended that the court place the children "with the foster family for permanent placement."

{¶50} For all of the above reasons, we do not agree with Appellant that the trial court erred, plainly or otherwise, by relying upon the GAL's report and recommendation.

Ineffective Assistance of Counsel

{¶51} Appellant next asserts that trial counsel was ineffective for failing to ask the GAL more questions about her investigation.

{¶52} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), citing *In re Heston,* 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998); *e.g., In re J.P.B.*, 4th Dist. Washington No. 12CA34, 2013-Ohio-787, ¶ 23; *In re K.M.D.,* 4th Dist. Ross No. 11CA3289, 2012-Ohio-755, ¶ 60; *In re A.C.H.,* 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 50. " 'Where the proceeding contemplates the loss of parents' "essential" and "basic" civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination

of parental custody.' " *Wingo* at 666, 758 N.E.2d 780, quoting *Heston* at 827, 719 N.E.2d 93.

{¶53} A parent who seeks to overturn a permanent custody decision on the basis of ineffective assistance of counsel must establish "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Madison*, 160 Ohio St.3d 232, 2020-Ohio-3735, 155 N.E.3d 867, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85.

{¶54} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Thus, a party challenging counsel's effectiveness "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State*

*v. Taylor,* 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10,

citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

Therefore, a party challenging counsel's effectiveness bears the burden to

show ineffectiveness by demonstrating that counsel's errors were "so

serious" that counsel failed to function "as the 'counsel' guaranteed * * * by

the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *e.g.,*

*Obermiller* at ¶ 84; *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679,

860 N.E.2d 77, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 156, 524 N.E.2d

476 (1988).

{¶55} To establish prejudice, the party must demonstrate that a

reasonable probability exists that " 'but for counsel's errors, the result of the

proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine the outcome.' " *Hinton v. Alabama,* 571

U.S. 263, 275, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014),

quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also State v.*

*Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State*

*v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of

the syllabus.  Furthermore, courts may not simply assume the existence of

prejudice, but must require the challenger to affirmatively establish

prejudice.  *See State v. Clark,* 4th Dist. Pike No. 02CA684, 2003-Ohio-1707,

¶ 22; *State v. Tucker,* 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002). As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *See State v. Jenkins,* 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons,* 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley,* 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard,* 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶56} "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶57} In the case at bar, even if Appellant could establish that trial counsel's decision not to question the GAL's investigative efforts was deficient, Appellant has not demonstrated that the result of the proceeding would have been different if counsel had asked the GAL about her

investigative efforts.  Instead, as we noted in our plain-error discussion, the GAL outlined some of her efforts and detailed her reasoning process during her closing argument.  Appellant has not asserted that additional questioning of the GAL would have produced inadequate efforts or a faulty reasoning process that would have led the court to question the GAL's recommendation.  Consequently, we do not believe that appellant has established that trial counsel failed to provide effective assistance of counsel.

{¶58} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error.

## CONCLUSION

{¶59} Having overruled Appellant's two assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and Appellant shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Juvenile Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**