[Cite as *In re A.P.*, 2024-Ohio-5639.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    A.P.,

ALLEGED NEGLECTED AND
DEPENDENT CHILD.

[EXIN M. - APPELLANT]

CASE NO. 5-24-17


**O P I N I O N**


Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 2022 AND 0028

**Judgment Affirmed**

**Date of Decision:  December 2, 2024**


APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Justin Kahle* **for Appellee**

**WILLAMOWSKI, P.J.**

{**¶1**} Appellant Exin M. ("Father") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, granting the motion of the Hancock County Job and Family Services - Children's Protective Services Unit ("the Agency") for permanent custody of A.P.  Father argues on appeal that 1) the judgment is against the manifest weight of the evidence and 2) A.P.'s guardian ad litem ("GAL") failed to perform the duties required by statute. For the reasons set forth below, the judgment is affirmed.

*Background*

{**¶2**} In 2014, A.P. was born to Kristina L.[1] and Father.  On March 16, 2022, the Agency received a report that a child was left in a home with a person dealing drugs and that the child went extended periods of time without food.  The Agency contacted law enforcement and learned there were several people in the home with active warrants and who were known drug users.  The case worker went to the home and spoke with A.P.  The case worker learned that the child stayed in the home with "Momma D" while her Father was working in Cleveland.  Sometimes Father would be gone for two weeks.  The case worker also spoke with Father via phone as he was in Cleveland.  The case worker and Father agreed on a person to provide care

---

[1] Kristina L. died in 2021, before the beginning of this case.

for A.P. out of the home. Eventually the case worker took A.P. to the police station to wait for a family friend to pick up A.P. While at the police station, A.P. indicated that there were times she would go several days without food and when she did eat, it was usually apples and goldfish crackers. The case worker also spoke with A.P.'s school which reported concerns for A.P.'s attendance and her basic needs being met. Father denied knowing that there were any concerns in the home while he was away.

{¶3} On May 5, 2022, the trial court held an adjudication hearing. By agreement of the parties, the trial court found A.P. to be a neglected and dependent child. The parties also agreed to immediately proceed to disposition and agreed that A.P. would remain in the temporary custody of the Agency. The trial court ordered that the April 25, 2022 case plan be implemented. The case plan required Father to 1) attend parenting classes, 2) provide safe and stable housing, and 3) engage in family counseling services with A.P.

{¶4} On January 24, 2023, the Agency filed for a six-month extension of temporary custody. The Agency noted that Father had progressed to overnight visits. The night before the first overnight visit, Father was cited with an OVI. Additionally, Father returned A.P. wearing the same clothing from the previous day and Father failed to provide treatment for a medical issue that arose during the visit. The OVI resulted in the Agency requesting that Father complete a drug and alcohol assessment. An administrative review of the case plan was conducted on March 7, 2023. The review indicated that Father was making some progress towards the

counseling goal. Father had made significant progress towards the parenting goal as he had completed the parent coaching and was actively working with the home coach. Father had completed the substance abuse assessment and was actively participating in an "SUD program" with some progress. The review indicated that Father and A.P. were both "consistently attending family counseling sessions". As a result, Father had begun having in home supervised visits.

{¶5} On June 21, 2023, the Agency filed a motion for permanent custody of A.P. The Agency alleged that A.P. could not be placed with Father within a reasonable amount of time and that A.P. had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period. The Agency also claimed that granting permanent custody would be in A.P.'s best interest.

{¶6} A case progress review was completed on September 6, 2023. The review noted that the Agency filed for permanent custody due to Father's failure to change his behaviors and the foster parent's expression of a desire to adopt A.P. The Agency stated that Father continued to allow people into the home that are not suitable to be around A.P., though not when A.P. was present. The Agency noted that Father reported to have completed the SUD program and that he had made progress on that issue. Additionally, Father and A.P. had made significant progress in their counseling and Father reported they were discharged from services. According to the Agency, A.P. had been in her foster placement for nine months

and was doing well there. The foster parents had expressed a desire to adopt A.P. and the Agency would be recommending the placement. On October 2, 2023, the Agency filed a motion to dismiss the permanent custody motion and requested a six-month extension. The trial court granted this motion the same day.

{¶7} On January 12, 2024, the Agency filed a second motion for permanent custody, again alleging that A.P. could not be returned to Father within a reasonable time and that she had been in the temporary custody of the Agency for more than twelve out of a twenty-two month period. The Agency claimed that the granting of permanent custody to the Agency was in the best interest of A.P. In the March 2024 review of the case plan, the Agency noted that Father continued to rely on others to parent A.P. and had not demonstrated a willingness to be a responsible parent. The report noted that the in home visits were suspended and visitation was returned to Harmony House. The report also noted that A.P. indicated a wish to be adopted by the foster parents rather than returning to Father's care.

{¶8} The GAL filed his report on May 2, 2024. The GAL noted that A.P. was thriving in the foster placement and was excelling in school. A.P. had been with the current foster family since late 2022 and considered the parents as "mom" and "dad". The GAL indicated that A.P. expressed a desire to live with the foster parents permanently. The GAL recommended that the Agency's motion be granted.

{¶9} The trial court held a hearing on the motion for permanent custody on May 6 and 7, 2024. The Agency presented the testimony of multiple witnesses and

Father testified on his own behalf. At the end, the Agency argued that A.P. had been in the temporary custody of the Agency for more than twelve out of a consecutive twenty-two month period prior to the filing of the motion for permanent custody. The Agency also argued that termination of Father's parental rights and granting the Agency's motion for permanent custody would be in the best interest of A.P. On May 28, 2024, the trial court entered judgment granting the Agency's motion for permanent custody. Father appealed from this judgment. On appeal he raises the following assignments of error.

**First Assignment of Error**

**The trial court's decision is against the manifest weight of the evidence. [The Agency] did not prove by clear and convincing evidence that the court should grant its motion for permanent custody of the minor child.**

**Second Assignment of Error**

**The child's guardian ad litem failed to perform necessary duties pursuant to [R.C. 2151.281], thereby not acting in the child's best interest, to [Father's] detriment and in violation of his due process.**

*Manifest Weight of the Evidence*

{¶10} Father argues in the first assignment of error that the judgment of the trial court was against the manifest weight of the evidence. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 2003–Ohio–1269, ¶ 6 (3d Dist.).

These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

 * * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

* * *

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.

* * *

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home

providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. "A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established." *In re Da.R.*, 2019-Ohio-2270, ¶ 9 (3d Dist.). The standard of review for a determination of legal custody is an abuse of discretion standard. *In re C.S.*, 2022-Ohio-2451 (3d Dist.).

{¶11} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 2017-Ohio-4352 (3d Dist.). The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court

must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶12} Here, the Agency argued and the trial court held that A.P. had been in the temporary custody of the Agency for more than twelve months out of a consecutive twenty-two month period. A review of the record shows that A.P. was removed from the home on March 25, 2022. Sixty days from that would be May 24, 2022. A.P. was adjudicated to be a dependent and neglected child on May 5, 2022. Thus, the date to be used for the calculation is May 5, 2022 as it is the earlier of the two. From the date of adjudication to the hearing date, A.P. remained in the temporary custody of the Agency. The motion for permanent custody at issue in this case was filed on January 12, 2024. This is more than 20 months out of a consecutive twenty-two month period, which exceeds the 12 months required by R.C. 2151.414(B)(1)(d).

{¶13} Once one of the factors in R.C. 2152.414 (B)(1) is met, the next step is for the trial court to determine whether the termination of parental rights is in the best interest of the child. The trial court specifically made findings of fact regarding the statutory factors and those factors were supported by the record. When considering the interactions of A.P. as required by R.C. 2151.414(D)(1)(a), the trial court made the following findings. The trial court determined that A.P. was bonded with the foster family and wished to remain in their care. The trial court noted that A.P. refers to the foster parents as "mom" and "dad" and that she is thriving in the

environment. As to Father, the trial court found that A.P. did not display a bond with him and did not wish to visit with him. The caseworker testified that she had seen A.P. avoid interacting with Father during the visits and that A.P. had told her that she did not wish to visit with Father. According to the caseworker, when A.P. speaks about Father, she expresses indifference. However, A.P. is very bonded with the foster parents and is frequently found cuddling with them. The foster mother testified that A.P. seems to have realized that Father was not going to change, so she started pulling away from him. The foster mother indicated that A.P. has indicated that she wishes to remain with them with just some phone calls from Father every now and then, but she does not wish to visit with him. The GAL noted the same in his opinion. Finally, Father indicated that A.P. had pulled away from him and no longer was as excited to see him.

{¶14} R.C. 2151.414(D)(1)(b) requires the trial court to consider the wishes of the children. The testimony of the caseworker, the GAL, and the foster mother all indicated that A.P. wished to remain with her foster parents rather than return to Father.

{¶15} R.C. 2151.414(D)(1)(c) addresses the custodial history of the children. As discussed above, A.P. was continuously in the care of the Agency from May 5, 2022. The motion for permanent custody was filed on January 12, 2024. This was more than 20 months in the Agency's custody. Additionally, prior to the case being opened, A.P. had been in the custody of her mother until she was removed by Mercer

County Children's Services. Father had obtained custody from that Agency a little over a year before this case was opened.

{¶16} R.C. 2151.414(D)(1)(d-e) address the children's needs for a legally secure placement and any other factors which might affect this. The trial court noted that the caseworker and the ongoing supervisor both testified that A.P. was in need of a legally secure permanent placement which could not be achieved without the granting of the Agency's motion. The GAL reached the same conclusion in his report.

{¶17} A review of the record indicates that the trial court fully considered the statutory factors when making a determination about the best interest of the children. The findings the trial court made were supported by the testimony of the various witnesses as well as the exhibits. Credible evidence was presented to support, by clear and convincing evidence, the trial court's decision to terminate Father's parental rights regarding A.P. Thus, the first assignment of error is overruled.

*GAL Required Duties*

{¶18} Father claims in the second assignment of error that the GAL failed to comply with the requirements of R.C. 2151.281(I) and Sup.R. 48 in that he failed to conduct an independent investigation. In his brief, Father admits that he failed to object to this issue below and it is thus reviewed using a plain error standard. *In re A.S.*, 2022-Ohio-1861 ¶ 54 (10th Dist.). "In civil cases, the plain error doctrine is

not favored and may only be applied in the extremely rare case involving exceptional circumstances such that the error, if left uncorrected, would challenge the fairness, integrity, or public reputation of the judicial process itself." *Brisco v. U.S. Restoration & Remodeling, Inc.*, 2019-Ohio-5318, ¶ 25 (10th Dist.). "The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant." *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985).

{¶19} The duties of a GAL are set forth in R.C. 2151.281.

> The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

R.C. 2151.281(I). The specific duties are spelled out in more detail in Sup.R. 48.03.

> (A) General Responsibilities. The responsibilities of a guardian ad litem shall include, but are not limited to, the following:
>
> (1) Provide the court recommendations of the best interest of the child. Recommendations of the best interest of the child may be inconsistent with the wishes of the child or other parties.
>
> (2) Maintain independence, objectivity, and fairness, as well as the appearance of fairness, in dealings with parties and professionals, both in and out of the courtroom, and have no ex parte communications with the court regarding the merits of the case;

(3) Act with respect and courtesy in the performance of the responsibilities of the guardian ad litem;

(4) Attend any hearing relevant to the responsibilities of the guardian ad litem;

(5) Upon becoming aware that the recommendations of the guardian ad litem differ from the wishes of the child, immediately notify the court in writing with notice to the parties or affected agencies. The court shall take action as it deems necessary.

(6) If necessary, request timely court reviews and judicial intervention in writing with notice to the parties or affected agencies;

(7) If the guardian ad litem is an attorney, file pleadings, motions, and other documents as appropriate and call, examine, and cross-examine witnesses pursuant to the applicable rules of procedure;

(8) Be available to testify at any relevant hearing. Attorneys who are to serve as both guardian ad litem and attorney in any dual appointments shall comply with Rule 3.7 of the Rules of Professional Conduct.

(9) If the guardian ad litem is not an attorney, avoid engaging in conduct that constitutes the unauthorized practice of law and be vigilant in performing the duties of the guardian ad litem;

(10) If the guardian ad litem is not an attorney, request the court to appoint an attorney for the guardian ad litem to file pleadings, motions, and other documents as appropriate and call, examine, and cross-examine witnesses pursuant to the applicable rules of procedure. The court shall take action as it deems necessary.

. . .

(D) Duties of the Guardian Ad Litem. Unless specifically relieved by the court, the duties of a guardian ad litem shall include, but are not limited to, the following:

(1) Become informed about the facts of the case and contact all relevant persons;

(2) Observe the child with each parent, foster parent, guardian or physical custodian;

(3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

Sup.R. 48.03. Although the rule should be followed by all GALs, the failure to do so does not automatically create reversible error. *In re K.S.,* 2023-Ohio-1721 (10th Dist.

{¶20} Father claims that the GAL violated the rules by 1) not filing the report timely and 2) not conducting an independent, objective investigation. The first claim we will address is the timeliness of the report. The rules do require that the GAL's report be filed not less than seven days before the permanent custody hearing. Sup.R. 48.06(B)(1). The trial court may alter that period if it chooses. Sup.R. 48.06(B)(1). Here, the GAL report was filed four days before the hearing. However, the GAL requested leave of the court to file it late and such leave was granted. The trial court noted that the motion for leave to file came with the consent of the parties. Since Father consented to the late filing, he may not now complain about the acceptance of the late filing. *RTO Funding, LLC v. Bryant,* 2023-Ohio-1775 (6th Dist.) (holding that a party cannot appeal a judgment to which he or she consented absent a reservation of the right to appeal).

{¶21} Father also claims that the GAL failed to conduct an independent, objective investigation. Father argues that the report should have had more detail and should not have made conclusory, negative statements about Father without stating a basis for them. Even if we were to agree with Father, the failings alleged do not rise to the level of plain error. To be plain error, the failings would need to be prejudicial to Father and result in a miscarriage of justice. To establish prejudice,

the party must demonstrate that a reasonable probability exists that the alleged error affected the outcome of the case. *In re S.W.*, 2023-Ohio-793, ¶ 46 (4th Dist.). That is not the situation in this case. A review of the record shows that the GAL report had no effect on whether A.P. had been in the custody of the Agency for more than twelve months out of a consecutive twenty-two month period. Thus, the only affect it could have is in the determination of the best interests of A.P. The only time the trial court referenced the GAL's report[2] while discussing the best interests of A.P., was when addressing the wishes of A.P. and the need for a legally secure permanent placement. In both instances the statements of the GAL were also presented through other witnesses. As to A.P.'s wishes, even Father admitted that A.P. had indicated she wished to remain with her foster parents. Thus the record does not indicate that the trial court's judgment would have been different if the GAL's report had been more detailed. The second assignment of error is overruled.

{¶22} Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**

---

[2] As the GAL did not testify at the hearing, the only expression of the GAL's opinion is his report.