DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Jolan Brady ("Mother") and David G. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their three minor children in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Mother and Father are the parents of C.G., born July 9, 2004; R.G., born January 30, 2000; and B.G., born September 24, 2002. Although CSB had originally been involved with this family on a voluntary basis, the agency filed an involuntary dependency action on June 16, 2006. The family had been evicted from a homeless shelter due to rules violations by Mother and the parents had no place for their children to live. The reunification plan for the parents focused on securing employment and stable housing, addressing their problems with substance abuse, mental health, and anger issues and completing parenting classes. *Page 2 
 {¶ 3} The parents did little to work toward reunification during the next year and, by the end of the first year of the case plan, each parent was incarcerated, although the circumstances that led to their incarcerations are not clear from the record. Mother spent nearly six months in prison for a forgery conviction and Father was incarcerated for three to four months and then placed on community control for a conviction of aggravated burglary.[1]
 {¶ 4} On September 13, 2007, CSB moved for permanent custody of the three children. The parents also moved for a six-month extension of temporary custody. Following a hearing on both motions, that trial court found that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests. Consequently, the trial court terminated parental rights and placed the children in the permanent custody of CSB.
 {¶ 5} Father appeals and raises three assignments of error. Mother appeals and raises one assignment of error. Because Mother's assignment of error is similar to Father's first and second assignments of error, they will be addressed jointly.
 MOTHER'S ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING PERMANENT CUSTODY WHERE THE BEST INTERESTS OF THE [CHILDREN] INDICATED THAT A SIX-MONTHS EXTENSION SHOULD HAVE BEEN GRANTED."
 FATHER'S ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN DENYING A SIX MONTH EXTENSION TO APPELLANT." *Page 3 
 FATHER'S ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} The parents argue that the trial court should have granted a six-month extension of temporary custody and that permanent custody was not in their children's best interests. We will first address the trial court's decision to deny their requests for a six-month extension of temporary custody.
 {¶ 7} Both parents recognize that the trial court's decision to grant or deny an extension of temporary custody in this case was a discretionary one. See In re M.C., 9th Dist. No. 22983, 2006-Ohio-1041, at ¶ 21; R.C. 2151.415(D)(1) and (2). Moreover, R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."
 {¶ 8} The parents have failed to demonstrate an abuse of discretion by the trial court. The record demonstrates that neither parent had made "significant progress" on their case plan goals, nor was there reason to believe that they could do so within an additional six-month extension period.
 {¶ 9} The case plan reunification goals for each of the parents were similar: obtain and maintain stable housing and employment, obtain a substance abuse assessment and follow any recommended treatment, complete parenting classes, and address their mental health and anger management issues. *Page 4 
 {¶ 10} In addition to the testimony of the caseworker that the parents had not made significant progress on their case plan goals, each of the parents testified at the hearing and admitted that they had done very little to work toward reunification with their children.
 {¶ 11} Father testified that he had completed an eight-week session of parenting classes, but the record demonstrated that Father was required to complete a more intensive 26-week parenting course. Father admitted that he had not completed any of the other goals of the case plan. As to his housing, he indicated that he was living either with his father, his aunt, or with a friend. Father stated that he was not currently employed but was "still seeking employment." He explained that he had no particular training or skill but that he was just trying to find a job to comply with the case plan. Father further admitted that he had not completed anger management or counseling because he could not afford them until he gets a job. There was evidence before the court, however, that Father could have obtained these services on a sliding-fee scale due to his financial situation.
 {¶ 12} Father's mother testified that Father has a long-term drinking problem. Father testified that he was still waiting to be admitted to an alcohol treatment program. Although Father had made arrangements to enter an alcohol treatment program, he had been put on a waiting list and had not yet started the program. This treatment program would take anywhere from nine to fourteen months for Father to complete.
 {¶ 13} Mother testified that she completed anger management classes while she was incarcerated, but she had no proof that she completed such a course or that it satisfied the requirements of the case plan. Mother admitted that she did nothing to work on her case plan during the first year of this case and that her period of incarceration gave her reason to work on some of the goals because she had the time and opportunity while in prison. After her release *Page 5 
from prison, however, Mother had not done much else to work toward reunification. She did obtain a substance abuse assessment but had not maintained regular contact with her substance abuse counselor. Mother testified that she had been sober while in prison because she had no other choice. After she was released from prison, however, she apparently violated her probation by possessing drug paraphernalia. Mother answered one question at the hearing and admitted to the probation violation but no further details about this incident appear in the record. Again, it would have been very helpful to the trial court's decision and to CSB's case if the agency had presented more evidence to the court pertaining to this incident.
 {¶ 14} Mother still had no employment and, like Father, she had no particular training or skills but testified that she was seeking whatever employment she could find. She further testified, however, that she had obtained employment at McDonald's but that she quit that job because she was not working enough hours. She explained that she could not live on that little income, so she apparently opted instead to get by with no income. Mother still had no stable housing and estimated that she had moved 20 times during the case plan period.
 {¶ 15} There was also evidence that both parents were required to submit to drug and alcohol screening twice a week but that neither of them had been submitting samples that frequently. Moreover, of the infrequent samples submitted, Mother had recently submitted a urine sample that tested positive for marijuana.
 {¶ 16} The evidence before the trial court clearly demonstrated that neither parent had made significant progress on the case plan, nor was there reason to believe that they could be prepared to take custody of their children in another six months if the trial court were to grant an extension of temporary custody. Therefore, the trial court did not abuse its discretion in denying the parents' motion for a six-month extension of temporary custody. *Page 6 
 {¶ 17} Next the parents challenge the trial court's decision to terminate their parental rights and place their children in the permanent custody of CSB. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 18} The trial court found that the first prong of the permanent custody test was satisfied because all three children had been in the temporary custody of CSB for more than 12 of the prior 22 months and the parents do not challenge that finding. The parents confine their argument to whether the trial court erred in finding that permanent custody was in the best interests of C.G., R.G., and B.G.
 {¶ 19} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and] *Page 7 
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[2]
 {¶ 20} The parents' interaction with their children during the eighteen months of this case plan was limited to weekly supervised visits. CSB never expanded the length or frequency of the visits, nor did the agency allow unsupervised visits, apparently because the parents had not complied with most of the requirements of the case plan. During the visits, the parents would become easily frustrated with the children and would tend to yell at them, particularly B.G. Each parent missed several of the scheduled one-hour visits prior to their incarceration and they missed all visits during their respective months of incarceration. Mother had no visitation with the children for approximately eight months due to her incarceration and Father missed at least three months of visits due to his incarceration.
 {¶ 21} The guardian ad litem spoke on behalf of the children, who were ages two, five, and almost eight years old at the time of the hearing. She indicated that permanent custody was in their best interests, noting that the parents had been given ample time to remedy their problems but had not done so. Although the parents had made a little progress working toward reunification, the guardian did not believe that they were prepared to handle the day-to-day challenges of caring for these three young children. The guardian further stated that she believed that the parents loved their children, but emphasized that they were unable to meet even their own basic needs.
 {¶ 22} By the time of the permanent custody hearing, C.G., R.G., and B.G. had been in the temporary custody of CSB for one and one-half years. This lengthy period constituted more *Page 8 
than half of the youngest child's life. During that time, the parents had done little to remedy their problems. Both were still unemployed and without stable housing and they had not adequately addressed their mental health or substance abuse problems. These parents were in no better position to provide a suitable home for their children than they had been when the children were removed from their custody.
 {¶ 23} The children were in need of a stable permanent placement and neither parent was able to provide them such a home. CSB had been unable to locate any suitable relatives who were willing and able to take custody of the children. Although the paternal grandmother had been visiting the children during the case plan and had considered taking custody of them, she testified at the hearing that she and her husband determined that they would not be able to care for three young children.
 {¶ 24} The trial court had ample evidence before it from which it could conclude that permanent custody was in the best interests of C.G., R.G., and B.G. Mother's assignment of error and Father's first and second assignments of error are overruled.
 FATHER'S ASSIGNMENT OF ERROR III "THE TRIAL COURT COMMITTED PLAIN ERROR IN ACCEPTING THE RECOMMENDATION OF THE GUARDIAN AD LITEM THE GUARDIAN'S REPORT WHEN THE GUARDIAN FAILED TO ASCERTAIN THE MINOR CHILDREN'S WISHES."
 {¶ 25} Father contends that the trial court committed plain error by accepting the guardian ad litem's report and testimony, as the guardian failed to indicate the wishes of the children. According to Father, given that the older two children were ages five and almost eight years old at the time of the hearing, the guardian ad litem should have ascertained their wishes or explained why she did not believe they could express their own wishes. It is true that the guardian ad litem filed a report and gave testimony that is completely silent on the wishes of the *Page 9 
children. She did not indicate whether she did or did not ascertain their wishes, nor did she offer an explanation for her failure to express their wishes.
 {¶ 26} Father concedes that because he did not raise this issue in the trial court, he must demonstrate plain error in the trial court's failure to ascertain the wishes of the children. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus.
 {¶ 27} Father has failed to demonstrate that this is one of those exceptional cases where plain error should be recognized. Of particular significance here, if Father truly wanted the trial court to consider his children's wishes, he could have attempted to get that evidence before the court. The guardian testified at the hearing and was subject to cross-examination and Father had every opportunity to explore this issue with the guardian. Father did not cross-examine the guardian on this issue at the hearing, nor did he raise any objection to the admission of the guardian ad litem's testimony or report. Had he done so at the proper time, the guardian likely would have supplemented her testimony or report by indicating the children's wishes or by explaining why she had not ascertained their wishes. Moreover, Father could have requested that the trial court conduct in camera interviews of the children, but he did not.
 {¶ 28} Father has not cited, nor were we able to find, any decisions in which a court has recognized plain error in such a situation where evidence of one best interest factor is weak or lacking where the evidence on the other factors weighs heavily in favor of permanent custody. The best interest test is a balancing test of several factors and the Supreme Court has stressed *Page 10 
that no single factor is controlling. See In re Schaefer,111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 56. Father's third assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, P. J. DICKINSON, J. CONCUR
[1] Crimes and/or probation violations committed by the parents can be highly relevant to the permanent custody decision, yet the record includes only scant details about these convictions. It is not clear why CSB did not present more detailed evidence about the crimes committed by these parents during the pendency of this case.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 1