[Cite as *In re K.A.*, 2024-Ohio-5430.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

IN RE:                                    :
                                          :
    K.A.                                  :        Case No. 24CA7
    J.A.                                  :
    A.B.                                  :
                                          :
    Adjudicated Dependent                 :        <u>DECISION AND JUDGMENT</u>
    Children.[1]                          :        <u>ENTRY</u>
                                          :
                                          :

---

**APPEARANCES**:

Richard D. Hixson, Zanesville, Ohio, for Appellant.

N. Zachary West, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

---

Smith, P.J.

{¶1} Appellant, Charles Clark, appeals the trial court's judgment that placed his child, four-year-old A.B., in the permanent custody of Athens County Children Services ("the agency"). In his first assignment of error, Appellant argues that the trial court's decision granting the agency permanent custody is against the manifest weight of the evidence. In his second assignment of error, Appellant contends that he did not receive the effective assistance of counsel.

---

[1] K.A. and J.A. are not involved in this appeal.

Upon review, we do not find any merit to Appellant's assignments of error. Accordingly, we overrule Appellant's two assignments of error and affirm the trial court's judgment.

## FACTS

{¶2}  On August 4, 2022, the agency filed a complaint that alleged the child is an abused, neglected, and dependent child.  The complaint alleged that the child's mother and Appellant admitted to using methamphetamines and to sleeping all day without ensuring that the child had appropriate care.  The agency also filed a motion for emergency custody of the child due to substance abuse issues in the home.  The court subsequently placed the child in the agency's emergency temporary custody.

{¶3}  On November 2, 2022, the trial court adjudicated the child a dependent child and placed her in the agency's temporary custody.

{¶4}  On August 14, 2023, the agency filed a motion to modify the disposition to permanent custody.  The agency alleged that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent and that placing the child in the agency's permanent custody is in her best interest.

{¶5}  On February 23, 2024, the trial court held a hearing to consider the agency's permanent custody motion.  The court also noted that the mother had

filed a motion that asked the court to place the children with Lois Davis, the child's maternal grandmother.

{¶6}  Davis testified first and stated that in 2007, she had her parental rights involuntarily terminated with respect to one of her children.  She also voluntarily surrendered permanent custody of her other children.

{¶7}  Caseworker Jacelyn McGaughey testified that the agency did not approve Davis's home as a placement for the child because Davis lost permanent custody of her own children.  McGaughey stated that the mother is incarcerated with an anticipated release date in October 2025 and that Appellant is incarcerated with an expected release date in November 2025.  McGaughey reported that the child is closely bonded with her half-siblings, who are not involved in this appeal.

{¶8}  The child's guardian ad litem (GAL) testified that she was unable to engage in a meaningful conversation with the child to discover her wishes and that the child did not appear to understand the consequences.  The child seems "happy and healthy" in the foster home.  One of the child's older half-siblings "was very adamant that she did not want to live with" Appellant.  The GAL recommended that the court place the child in the agency's permanent custody.

{¶9}  On March 1, 2024, the trial court granted the agency permanent custody of the child.  The court found that the child cannot be placed with either

parent within a reasonable time or should not be placed with either parent and that

placing the child in the agency's permanent custody is in the child's best interest.

{¶10} The court considered the child's interactions and interrelationships

and observed that Appellant does "not have a current relationship with [his] child

and visitation cannot be exercised" with the child. The court pointed out that

Appellant currently is serving a sentence for a crime committed against the child

and is serving a prison sentence "well-beyond an eighteen (18) month timeframe."

{¶11} With respect to the child's wishes, the court found that she is too

young to express her wishes. The court recognized that the GAL recommended

that the court place the child in the agency's permanent custody.

{¶12} Regarding the child's custodial history, the court observed that the

child has not been in the agency's temporary custody for 12 or more months of a

consecutive 22-month period.

{¶13} The court next considered the child's need for a legally secure

permanent placement and whether the child can achieve that type of placement

without granting the agency permanent custody. The court found that the child

cannot achieve permanency without granting the agency permanent custody. The

court explained that both parents "are serving prison sentences for felony child

endangerment convictions" and "are set to remain incarcerated for the foreseeable

future."[2]  The court declined the child's mother's request to place the child in the

maternal grandmother's legal custody.  The court observed that the maternal

grandmother "has had previous children services involvement that also resulted in

her voluntarily terminating her parental rights of some of her children."

{¶14} The court thus granted the agency permanent custody of the child.

This appeal followed.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED WHEN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILD, AS SUCH A FINDING WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     APPELLANT'S DUE PROCESS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS DENIED.

First Assignment of Error

{¶15}  In his first assignment of error, Appellant argues that the trial court's

judgment is against the manifest weight of the evidence.  More specifically,

Appellant asserts that the record fails to contain clear and convincing evidence to

support the trial court's decision that placing the child in the agency's permanent

custody is in her best interests.

---

[2] During the permanent custody hearing, none of the parties offered specific evidence regarding the nature of these criminal offenses.  One of the case plans indicated that Appellant and the child's mother "were substantiated as having sexually abused" the child's two half-siblings.

Standard of Review

{¶16} A reviewing court generally will not disturb a trial court's permanent custody judgment unless the judgment is against the manifest weight of the evidence. *E.g., In re R.M.*, 2013-Ohio-3588, ¶ 53 (4th Dist.). When an appellate court reviews whether a trial court's permanent custody judgment is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶17} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). "Thus, if the children services agency presented

competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.*, 2013-Ohio-3588, at ¶ 55 (4th Dist.).

{¶18} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175.  A reviewing court should find a trial court's permanent custody judgment against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.* quoting *Martin* at 175; *see Black's Law Dictionary* (12th ed. 2024) (the phrase "manifest weight of the evidence" "denotes a deferential standard of review under which a verdict will be reversed or disregarded only if another outcome is obviously correct and the verdict is clearly unsupported by the evidence").

{¶19} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v.*

*Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian,* 2004-Ohio-

3146, ¶ 7 (4th Dist.).  As the Ohio Supreme Court long ago explained:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952).

Permanent Custody Framework

{¶20}  R.C. 2151.414(B)(1) specifies that a trial court may grant a children

services agency permanent custody of a child if the court finds, by clear and

convincing evidence, that (1) the child's best interest would be served by the award

of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶21} In the case at bar, the trial court found that R.C. 2151.414(B)(1)(a) applies. Appellant does not dispute this finding. Instead, he challenges the trial court's finding that placing the child in the agency's permanent custody is in her best interest.

{¶22} R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as well as specific, factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The specific factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally

secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶23} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 2007-Ohio-1104, ¶ 57, citing *In re Schaefer*, 2006-Ohio-5513, ¶ 56; *accord In re C.G.*, 2008-Ohio-3773, ¶ 28 (9th Dist.); *In re N.W.*, 2008-Ohio-297, ¶ 19 (10th Dist.). However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 2017-Ohio-142, ¶ 24 (3d Dist.); *In re A.C.*, 2014-Ohio-4918, ¶ 46 (9th Dist.). In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 2016-Ohio-916, ¶ 66 (4th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324 (1991).

{¶24} In the case at bar, Appellant contends that the evidence does not support the court's finding that the child needs a legally secure permanent placement. Appellant claims that the trial court should have considered extending the temporary custody order so that the agency could continue exploring kinship

caregivers. Appellant has not challenged the trial court's findings regarding the other best interest factors, so we do not address them.

Legally Secure Permanent Placement

{¶25} "Although the Ohio Revised Code does not define the term 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.), citing *In re Dyal*, 2001 WL 925423, *9 (4th Dist. Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 2015-Ohio-4682, ¶ 28 (10th Dist.) (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 2013-Ohio-1293, ¶ 95 (11th Dist.) (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 2007-Ohio-2007, ¶ 34 (10th Dist.) (Sadler, J., dissenting) (stating that a legally secure permanent placement means "a placement that is stable and consistent"); *Black's Law Dictionary* (6th Ed. 1990) (defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *id.* (defining "permanent" to mean, in part, "[c]ontinuing or enduring in the same state, status,

place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient"). Thus, "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *M.B.* at ¶ 56.

{¶26} Here, ample, clear and convincing evidence shows that neither Appellant nor the child's mother can provide the child with a legally secure permanent placement. Both are incarcerated due to crimes committed against the children who had been under their care. Neither parent is expected to be released from prison any sooner than October 2025. Moreover, the agency investigated several relative placement options but none was acceptable. Appellant has not cited any authority that required the trial court to continue the child in the agency's temporary custody and to mandate the agency to continue searching for kinship caregivers[3] when the remaining evidence indicated that the child's best interest would be served by placing her in the agency's permanent custody. *See generally In re K.M.*, 2014–Ohio–4268, ¶ 9 (9th Dist.) ("If permanent custody is in the

---

[3] We observe that R.C. 2151.4116(A) requires an agency to "make intensive efforts to identify and engage an appropriate and willing kinship caregiver for the care of a child who is in" the agency's temporary custody. At the permanent custody hearing, the agency identified some of those efforts, and Appellant has not raised any argument on appeal that the agency failed to comply with R.C. 2151.4116(A). Furthermore, an October 11, 2023 case plan indicated that the parents "asked that the children not be moved from their foster placement unless the children will not return to their parents['] custody as the children are doing well in their foster placement."

child's best interest, legal custody or placement with [a parent or other relative] necessarily is not.").

{¶27} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignment of error.

Second Assignment of Error

{¶28} In his second assignment of error, Appellant argues that he did not receive the effective assistance of counsel. He alleges that trial counsel performed ineffectively by failing to cross-examine witnesses or present evidence.

{¶29} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666 (4th Dist.2001), citing *In re Heston,* 129 Ohio App.3d 825, 827 (1st Dist.1998); *e.g., In re J.P.B.*, 2013-Ohio-787, ¶ 23 (4th Dist.); *In re K.M.D.,* 2012-Ohio-755, ¶ 60 (4th Dist.); *In re A.C.H.,* 2011-Ohio-5595, ¶ 50 (4th Dist.). " 'Where the proceeding contemplates the loss of parents' "essential" and "basic" civil rights to raise their children, . . . the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.' " *Wingo* at 666, quoting *Heston* at 827.

{¶30} A parent who seeks to overturn a permanent custody judgment on the basis of ineffective assistance of counsel must establish "(1) deficient performance

by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Madison*, 2020-Ohio-3735, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *accord State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85.

{¶31} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Thus, a party challenging counsel's effectiveness "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith,* 17 Ohio St.3d 98, 100 (1985). Therefore, a party challenging counsel's effectiveness bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland,* 466 U.S. at 687; *e.g., State v. Obermiller*, 2016-Ohio-1594, ¶ 84; *State v. Gondor,* 2006-Ohio-6679, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 156 (1988).

{¶32} To establish prejudice, the party must demonstrate that a reasonable probability exists that " 'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.' " *Hinton v. Alabama,* 571 U.S. 263, 275 (2014), quoting *Strickland,* 466 U.S. at 694; *see also State v. Short,* 2011-Ohio-3641, ¶ 113; *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require the challenger to affirmatively establish prejudice. *See State v. Clark,* 2003-Ohio-1707, ¶ 22 (4th Dist.); *State v. Tucker,* 2002 WL 507529 (4th Dist. Apr. 2, 2002).

{¶33} "Failure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000) (stating that a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶34} In the case at bar, even if Appellant could establish that trial counsel performed deficiently, Appellant has not demonstrated a reasonable probability that the result of the proceeding would have been different if counsel had cross-examined witnesses or presented evidence. Appellant is incarcerated with an expected release date in November 2025. He was convicted of child endangerment

involving children under his care.  Nothing suggests that if trial counsel had cross-examined witnesses or presented evidence, the trial court would have overruled the agency's permanent custody motion and extended the temporary custody order to give the agency more time to explore other options or to give Appellant time to be released from prison and to establish a relationship with the child.

{¶35} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**