[Cite as *In re C.D.L.*, 2026-Ohio-1254.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

|  |  |  |
|---|---|---|
| In re C.D.L., et al., | : | |
| | : | Case Nos. 25CA37 |
| Adjudicated Dependent Children. | : | 25CA38 |
| | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| | : | **RELEASED: 03/30/2026** |

_____

<u>APPEARANCES:</u>

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Kelsey R. Riffle, Washington County Assistant Prosecutor, Marietta, Ohio, for appellee.

_____

Wilkin, J.

{¶1} Appellant, the children's mother, appeals the judgments of the Washington County Court of Common Pleas, Juvenile Division, that granted Washington County Department of Job and Family Services ("the agency"), permanent custody of her two children: 13-year-old C.D.L., and 12-year-old J.N.L.

{¶2} Appellant raises one assignment of error that asserts that she did not receive the effective assistance of counsel. After our review of the record and the applicable law, we do not find any merit to appellant's assignment of error. Therefore, we affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶3} In early January 2024, the agency became aware of "repeated allegations of the children being left unsupervised, and with relatives with no contact for days at a time, chronic truancy, missed appointments with providers,

and continued contact with" an individual who had a history or physically abusing one of the children and appellant. The agency decided to remove the children in order to assess the risk. To that end, the agency sought and received ex parte orders that placed the children in its emergency, temporary custody.

{¶4} The next day, the agency filed complaints that alleged the children were dependent children and that requested temporary custody of the children.

{¶5} On March 1, 2024, the trial court adjudicated the children dependent. The court later entered dispositional orders that placed the children in the agency's temporary custody.

{¶6} On May 27, 2025, the agency filed motions that asked the court to place the children in its permanent custody. The agency alleged that (1) the children had been in its temporary custody for 12 or more months of a consecutive 22-month period and (2) placing the children in its permanent custody would be in their best interest.

{¶7} On August 14, 2025, the trial court held a hearing to consider the agency's permanent custody motions. Caseworker Alisha Riddle testified as follows. During an approximately six-month period before the agency sought to remove the children from the home, the agency had been attempting to work with the family due to concerns regarding domestic violence between appellant and the children's father,[1] substance abuse, lack of supervision, and "housing concerns." In January 2024, the agency removed the children from the home due to these unresolved concerns.

---

[1] The children's father had little involvement in the case, and the trial court found that he had abandoned the children.

{¶8} The agency developed a case plan that required appellant to, in part, (1) obtain and maintain safe and stable housing, (2) obtain and maintain stable employment or otherwise have the ability to meet the children's needs, (3) complete a mental health assessment and follow any treatment recommendations, (4) provide clean drug screens, and (5) complete a drug and alcohol assessment and follow any treatment recommendations.

{¶9} Appellant did not successfully complete any of these five requirements. At the time of the permanent custody hearing, appellant had not provided the agency with an address where she was residing. Appellant claimed that she had been living with a friend who recently had been released on parole, but the agency was unable to verify appellant's residence.

{¶10} Appellant also had not maintained stable employment or demonstrated an ability to provide for the children's needs. She reportedly obtained a job working at a hotel, but that job apparently did not last. Appellant later indicated that she was working at a restaurant, but the agency was unable to verify appellant's employment.

{¶11} Appellant completed a mental health assessment, but she did not follow treatment recommendations. Throughout the life of the case, appellant did not return any clean drug screens. Appellant attempted to engage in services for her substance abuse, but she did not complete the services. Additionally, appellant did not consistently visit the children. She attended only 24 of 71 visits available to her.

{¶12} The children's foster care caseworker testified that the children have been in the same foster home since their removal and are doing well in the foster home.

{¶13} The foster mother testified that the children are "very happy" in her home, but she agreed that their first choice would be to live with appellant. The foster mother stated that she is willing to keep the children in her home until the agency finds a permanent placement.

{¶14} After the foster mother's testimony, the court took a recess. After the recess, appellant's counsel indicated that, during the recess, he had spoken with appellant about testifying. Counsel stated that he did not believe that appellant was emotionally prepared to testify and asked if he would be permitted to read appellant's prepared statement into evidence. The court allowed counsel to read appellant's statement into evidence.

{¶15} Appellant's statement advised the court that she "want[ed] to change" and that she will "never give up on [her] kids." She asked the court to give her "more time to get [her] life together."

{¶16} The children's guardian ad litem (GAL) testified next and reported that the children love appellant and would like to return home. However, she did not recommend returning the children to the home due to the concerns regarding substance abuse. The GAL believed that placing the children in the agency's permanent custody would be in their best interest.

{¶17} After the GAL's testimony, the parties and the GAL presented short closing statements. The agency argued that appellant had not made sufficient

progress to allow the children to be returned to her custody.  Appellant's counsel stated, "we know the Court will take this matter under advisement, and we trust the process."  The GAL recognized that the children love appellant but asserted her belief that appellant's substance abuse poses "a safety issue."

{¶18} On September 24, 2025, the trial court granted the agency permanent custody of the two children.  The trial court found that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that placing them in the agency's permanent custody is in their best interest.  The court thus granted the agency permanent custody of the children.  These appeals followed.

ASSIGNMENT OF ERROR

THE MOTHER-APPELLANT WAS DENIED HER GUARANTEED
RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶19}  In her sole assignment of error, appellant argues that she did not receive the effective assistance of counsel.  She contends that trial counsel performed deficiently because he did not "present or argue any case consistent with [her] stated desire to seek denial" of the agency's permanent custody motion.  Appellant further asserts that trial counsel entirely failed to subject the agency's case to meaningful adversarial testing and that she thus is entitled to a presumption of prejudice.  She states that trial counsel completely failed to "present an opening statement, call witnesses, enter exhibits, or offer closing statement."  Appellant claims that counsel did nothing to subject the agency's case "to meaningful adversarial testing."

**{¶20}** The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to "the Assistance of Counsel for [their] defence." U.S. Const., amend. VI.  This right to the assistance of counsel includes " 'the right to the effective assistance of counsel.' "  *Strickland v. Washington*, 466 U.S. 668, 686 (1984), quoting *McMann v. Richardson*, 397 U.S. 759, 771, fn. 14 (1970).  Importantly, however, "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." *Burt v. Titlow*, 571 U.S. 12, 24 (2013).  Moreover, given that "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," courts must apply "the *Strickland* standard . . . with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011), quoting *Strickland*, 466 U.S. at 690; *accord State v. Rogers*, 2025-Ohio-4794, ¶ 35.

**{¶21}** Parents facing the permanent termination of their parental rights are guaranteed the right to the effective assistance of counsel.  *See, e.g., In re S.W.*, 2023-Ohio-793, ¶ 53 (4th Dist.).  In determining whether a parent in a permanent custody proceeding received the effective assistance of counsel, courts apply the same test for ineffective assistance of counsel used in criminal cases.  *See, e.g., In re K.A.*, 2024-Ohio-5430, ¶ 29 (4th Dist.); *In re Wingo*, 143 Ohio App.3d 652, 666 (4th Dist.), quoting *In re Heston*, 129 Ohio App.3d 825, 827 (1st Dist. 1998). Thus, to establish constitutionally ineffective assistance of counsel in a permanent custody proceeding, a parent must show " '(1) deficient performance

by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.' " *S.W.*, 2023-Ohio-793, at ¶ 53 (4th Dist.), quoting *State v. Madison*, 2020-Ohio-3735, ¶ 202; *see e.g., Strickland,* 466 U.S. at 687; *State v. Powell,* 2012-Ohio-2577, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones,* 2008-Ohio-968, ¶ 14 (4th Dist.); *accord Rogers*, 2025-Ohio-4794, at ¶ 25 ("Both the deficient-performance and prejudice prongs must be met for a successful ineffective-assistance claim; neither is individually sufficient.").

{¶22} When considering whether counsel's performance was deficient, "appellate courts must be 'highly deferential' to trial counsel's performance." *Rogers*, 2025-Ohio-4794, at ¶ 35, quoting *Strickland*, 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105, quoting *Strickland,* 466 U.S. at 690. In assessing an attorney's compliance with prevailing professional norms, " 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters*, 2014-Ohio-4966, ¶ 23 (4th Dist.), quoting *Strickland,* 466 U.S. at 689. The challenging party bears the burden to " 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *State v. Jarrell*, 2017-Ohio-520, ¶ 49 (4th Dist.), quoting *Strickland,* 466 U.S. at 689.

{¶23} Additionally, courts should not allow hindsight "to distort the assessment of what was reasonable in light of counsel's perspective at the time." *State v. Cook*, 65 Ohio St.3d 516, 524-25 (1992). Evaluating trial counsel's conduct with the benefit of hindsight is inappropriate because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105. Indeed, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

{¶24} To establish prejudice, the challenging party must demonstrate that a reasonable probability exists that " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Hinton v. Alabama*, 571 U.S. 263, 275 (2014), quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. Furthermore, courts ordinarily may not simply presume the existence of prejudice but must require the challenging party to affirmatively establish prejudice. *E.g., State v. Clark*, 2003-Ohio-1707, ¶ 22 (4th Dist.). As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective-assistance-of-counsel claim. *E.g., State v. Jenkins*, 2014-Ohio-3123, ¶ 22 (4th Dist.); *State v. Simmons*, 2013-Ohio-2890, ¶ 25 (4th Dist.); *State v. Halley*, 2012-Ohio-1625, ¶ 25 (4th Dist.); *State v. Leonard*, 2009-Ohio-6191, ¶ 68 (4th Dist.); *accord State v.*

*Powell*, 2012-Ohio-2577, ¶ 86 (an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶25} However, in limited circumstances, courts may presume prejudice. *See Florida v. Nixon*, 543 U.S. 175, 190 (2004) (noting that prejudice may be presumed in narrow circumstances); *see also United States v. Cronic*, 466 U.S. 648, 658-59 (1984); *Garza v. Idaho*, 586 U.S. 232, 237 (2019).  For example, "the complete denial of counsel" is "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified."  *Cronic*, 466 U.S. at 658-59.  This complete-denial-of-counsel prejudice presumption typically applies if an "accused is denied counsel at a critical stage" of the proceedings.  *Id.* Likewise, the prejudice presumption may apply "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Id.*

{¶26} A defendant who asserts that the presumption applies because counsel failed to subject the prosecution's case to meaningful adversarial testing must show that "the attorney's failure [was] complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2002).  Thus, a defendant is not entitled to the presumption if the defendant merely asserts that counsel failed to oppose the prosecution's case "at specific points."  *Id.*  A defendant's challenge to counsel's failure to oppose the prosecution's case "at specific points" is "plainly of the same ilk as other specific attorney errors" that are "subject to *Strickland*'s performance and prejudice components."  *Id.* at 697-698, citing *Burger v. Kemp*, 483 U.S. 776, 788 (1987), and *Darden v. Wainwright*, 477 U.S. 168, 184 (1986).

**{¶27}** This court has considered the prejudice presumption in the context of a juvenile delinquency proceeding and determined that "[c]ounsel's decision not to present evidence at the dispositional hearing does not equate to a finding that counsel *entirely* failed to subject the prosecution's case to meaningful adversarial testing." (Emphasis sic.) *In re A.C.*, 2023-Ohio-902, ¶ 18 (4th Dist.). In *A.C.*, the juvenile faulted counsel for failing to present evidence at the dispositional hearing to support her request for probation. She argued that counsel did not conduct any discovery during the dispositional phase and asserted that merely presenting a closing argument did not subject the State's case to meaningful adversarial testing. We disagreed with the juvenile and observed that her argument contradicted "*Bell*'s emphatic reminder that the presumption applies when ' "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." ' " (Emphasis in original.) *A.C.*, 2023-Ohio-902, at ¶ 18, quoting *Bell*, 535 U.S. at 697, quoting *Cronic*, 466 U.S. at 659.

**{¶28}** In the case before us, presuming for the sake of argument that the prejudice presumption would apply in the context of a permanent custody proceeding, we do not believe that appellant has established that trial counsel entirely failed to subject the agency's case to meaningful adversarial testing. As appellant recognizes in her brief, trial counsel participated in the permanent custody hearing by cross-examining the agency caseworker and the foster care caseworker. Additionally, although appellant was too emotional to testify at the hearing, counsel read her statement into evidence. In her statement, appellant asked the court to give her additional time to straighten out her life so that the

children could be returned to her.  Thus, contrary to appellant's assertion, trial counsel did not entirely fail to subject the agency's case to meaningful adversarial testing.  Therefore, we do not agree with appellant that the presumed-prejudice standard applies to her ineffective-assistance-of-counsel claim.  Consequently, appellant must establish the *Strickland* prejudice standard, i.e., a reasonable probability exists that but for counsel's alleged deficient performance, the result of the proceeding would have been different.

{¶29} Appellant has not specifically argued, however, that she can establish the *Strickland* prejudice standard.  Instead, she relies solely upon the presumed-prejudice standard.  Given that appellant has not presented an argument regarding the *Strickland* prejudice standard, we will not create one for her.  *E.g., A.C.*, 2023-Ohio-902, at ¶ 19 (4th Dist.).  We simply note that, even if counsel performed deficiently, nothing suggests that the outcome of the proceeding would have been different if counsel had employed each tactic appellant now claims counsel should have employed.

{¶30} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error.

### CONCLUSION

{¶31} Having overruled appellant's sole assignment of error, we affirm the trial court's judgments.

**JUDGMENTS AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
         Kristy S. Wilkin, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**